IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Cr. No. 20-305 |
| | ) |
| HAROLD SOSNA | ) |

**TENTATIVE FINDINGS AND RULINGS**

The Probation Office has conducted a presentence investigation and submitted a presentence report. Both parties have been given the opportunity to file objections and position papers as required by Local Criminal Rule 32.C.4. Neither party had objections to the guideline calculations. The Government has filed a Sentencing Memorandum. ECF No. 47. Through his initial defense counsel, Defendant, Harold Sosna, has filed a Sentencing Memorandum and a Supplemental Sentencing Memorandum, in which he moves for a downward departure and variance. ECF Nos. 48 & 49. Mr. Sosna's recently retained new counsel has filed an Amended and Supplemental Memorandum in Aid of Sentencing as well as a Motion for Downward Departure and Variance. ECF Nos.57 & 58. The Probation Office has submitted the final addendum to the presentence report pursuant to Local Criminal Rule 32.C.6. Accordingly, pursuant to Local Criminal Rule 32.C.7, the Court hereby notifies the parties of the following tentative findings and rulings concerning disputed facts or factors.

**I.      Motion for Downward Departure**

The Court must formally rule on any motions prior to determining the guideline calculation. A downward departure, if granted, would affect the sentencing guideline range. In the first Motion for Downward Departure, defense counsel argues that Mr. Sosna's age and health conditions warrant a downward departure from the sentencing guidelines pursuant to

1

USSG § 5H1.1 (Age) and, although not cited, § 5H1.4 (Health Conditions). In the second Motion for Downward Departure, and in the Amended and Supplemental Memorandum in Aid of Sentencing, newly retained defense counsel argues that Mr. Sosna warrants a downward departure because he has demonstrated extraordinary post-offense rehabilitation and an extraordinary acceptance of responsibility that is substantially in excess of that ordinarily present. ECF No. 57, at 19-20, citing United States v. Lieberman, 971 F.2d 989, 996 (3d Cir. 1992).

At the outset the Court notes that in both motions for a downward departure and the accompanying arguments, counsel mixes the argument for a formal, legal departure with arguments for a variance. For example, the initial Motion for Downward for Departure cites to Mr. Sosna's age and health as reason justifying a downward departure, but then argues that Mr. Sosna's "exemplary behavior while awaiting sentencing, his family's support, his willingness to immediately and capably begin the restitution process, and the absence of any criminal history before this instant matter" warrant a sentence below the guideline range. ECF No. 48, at 10. In newly appointed counsel's argument in support of a Downward Departure he cites Donaldson v. United States, 593 F. Supp. 2d 691, 695-96 (D. Del. 2009) for the proposition that "Third Circuit precedent permits an additional *variance* beyond the three-levels allowed by § 3E1.1." ECF No. 57, at 19 (emphasis added). However, Section 5K2.0(d) specifically identifies "Prohibited Departures," stating in relevant part that "the court may not depart from the applicable guideline range based on . . . (2) The defendant's acceptance of responsibility for the offense, which may be taken into account only under §3E1.1 (Acceptance of Responsibility)" U.S.S.G. 5K2.0(d)(2). Thus, while a *variance* may

2

be based on section 3E1.1, this subsection is not a proper consideration for a formal *departure* under the Guidelines. United States v. Severino, 454 F.3d 206, 211 (3d Cir. 2006) ("'a guidelines departure prohibition does not preclude the district court from considering [extraordinary acceptance of responsibility] when the issue is a variance under Booker.'")

Turning to the arguments for a formal departure, the Sentencing Guidelines' Policy Statement with respect to age states that, age "may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.1.  "Age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration." Id.  With respect to health conditions, the Guidelines provide that "[p]hysical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. An extraordinary physical impairment may be a reason to depart downward; *e.g.*, in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment." U.S.S.G. § 5H1.3.  At to both characteristics, Chapter Five, Part K, Subpart 2, titled "Other Grounds for Departure," provides as follows:

> (4) DEPARTURES BASED ON NOT ORDINARILY RELEVANT OFFENDER CHARACTERISTICS AND OTHER CIRCUMSTANCES.—An offender characteristic or other circumstance identified in Chapter Five, Part H (Offender Characteristics) or elsewhere in the guidelines as not ordinarily

3

>relevant in determining whether a departure is warranted may be relevant to this determination only if such offender characteristic or other circumstance is present to an exceptional degree.

U.S.S.G. § 5K2.0(a)(4).  As stated, age and physical impairments are taken into consideration in Chapter Five, Part H.  The Court will receive evidence and hear argument as to the Motion for Downward Departure as to age and health conditions at sentencing.  However, on the basis of the present information in light of the applicable guideline sections, the Court tentatively denies the Motion for Downward Departure based on age and health conditions.  The Court finds that Mr. Sosna's age and health conditions, either alone or in combination, are not present to an unusual or exceptional degree, and do not render Mr. Sosna's situation an exceptional case.

In support of a departure based on extraordinary post-offense rehabilitation, Mr. Sosna argues that he voluntarily turned himself in before he knew that an investigation had begun, admitted to the full scope of his conduct, and fully cooperated with the government.  Further, Mr. Sosna argues that he took concrete steps to remedy the harm caused by his crimes.  Specifically, he states that he aided federal authorities and the victim banks in their efforts to recover restitution.  Given the mixed nature of Mr. Sosna's argument, in which he incorporates by reference his arguments for a variance, as well as the fact the government has yet to formally respond to the motion for downward departure, the Court reserves ruling on this argument for a downward departure pending additional evidence and argument at sentencing.

## II. Motion for Variance

Mr. Sosna also requests a variance from the Guideline sentence based on relevant factors set forth in 18 U.S.C. § 3553(a). As noted, in Mr. Sosna's Motions for Downward Departure he argues that a departure is warranted based upon his arguments in support of a variance. Although the Court has tentatively denied his initial Motion for Downward Departure and reserved ruling on his second Motion for Downward Departure, Mr. Sosna's request for a variance will be considered as a separate matter. The Court therefore reserves ruling on the request for a variance until after the Court receives evidence and hears argument at sentencing.

## III. Guidelines Calculation

Based on the above the Court makes the following tentative guidelines calculations in accordance with the United States Sentencing Guidelines.

Defendant's Base Offense Level is seven (7), pursuant to Section 2B1.1 of the Sentencing Guidelines. The Base Offense Level is increased by twenty-two (22) levels pursuant to §2B1.1(b)(1)(L), because the total loss was more than $25,000,000.00 but less than $65,000,000.00. This brings the Adjusted Offense Level to twenty-nine (29).

The Adjusted Offense Level is reduced by 2 levels, pursuant to Section 3E1.1(a) of the Guidelines, to reflect Defendant's acceptance of responsibility; and reduced by an additional 1 level pursuant to Section 3E1.1(b) of the Guidelines, to reflect Defendant's timely acceptance of responsibility. Therefore, the Total Offense Level is twenty-six (26).

Defendant has zero criminal history points, which results in a Criminal History Category of I.  Based on a total offense level of 26 and a criminal history of I, the advisory guidelines range call for imprisonment of 63 to 78 months.

Defendant is also subject to a term of supervised release of two (2) to five (5) years (Class B felony).

The Defendant is ineligible for probation because it is expressly precluded by statute. U.S.S.G. § 5B1.1(b)(2); 18 U.S.C. § 3561(a)(2). .

The Guideline fine range for this offense is $25,000 to $1,000,000.  A special assessment of $100 per count is mandatory, for a total special assessment of $100.

Pursuant to 18 U.S.C. § 3663A, restitution is mandatory.  The issue of restitution is more fully addressed in the next section.

Forfeiture is applicable, and forfeiture of a sum of United Sates currency equal to $59,240,000 will be ordered.

### IV.     Restitution

According to the Government, victim S&T Bank suffered a loss of $59,240,000.000; however, S&T Bank has not filed a Victim Impact Statement, and to the Court's knowledge S&T Bank has not requested restitution.  To date, the Probation Office has received three Victim Impact Statements[1].

1) General Electric Credit Union (GECU) of Cincinnati, Ohio, indicates that it suffered losses of $30,243,454.00, which was offset by $1,000,000.00 received under an insurance policy with Cuna Mutual Group of Madison, Wisconsin, for a net loss of $29,243,454.00.

---

[1]  A fourth Victim Impact Statement was received by the Probation Office, in which the victim explains how Mr. Sosna's conduct has affected him and his business; however that victim does not make a request for restitution.

2) Stuart-Lippman and Associates, Inc. of Tucson, Arizona, requests restitution in the amount of $1,000,000.00 on behalf of Cuna Mutual Group.
3) First Financial Bank, an Ohio banking corporation, indicates that it suffered loan losses of $6,171,337.85 and attorney fees of $514,587.71.

Although there is mention of numerous pending lawsuits that may impact restitution amounts, the Court has not received any further information as to requested restitution amounts or victim payees. If restitution cannot be properly ascertained by time of sentencing, final determination of restitution may be deferred. The following provisions of Title 18 of United States Code Section 3664 are relevant to determining restitution in this case. Section 3664(e) explains the applicable evidentiary standard and the burdens of proof as follows:

> (e) Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government. The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant. The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires.

18 U.S.C.§ 3664(e). As to insurance compensation provided to a victim, section 3664(j)(1) provides that restitution of the victim is prioritized over payment of restitution to the insurer:

> (j)(1) If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation.

18 U.S.C. § 3664(j)(1). As to the recovery of losses by victims in civil lawsuits, section 3664(j)(2) provides:

> (2) Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in—

   (A) any Federal civil proceeding; and

   (B) any State civil proceeding, to the extent provided by the law of the State.

18 U.S.C. § 3664(j)(2).  Finally, section 3664(d)(5) permits the Court to defer determination of restitution as follows:

> (5) If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing. . . .

18 U.S.C.§ 3664(d)(5).

### V. Conclusion

The Court will receive evidence and hear argument regarding these tentative findings and rulings as well as any other motions and responses thereto at the time set for sentencing presently scheduled for October 7, 2021 at 10:15 AM.  In light of the likelihood that extensive evidence and argument may be necessary for resolution of the outstanding Motions for Departure, Motions for a Variance, and for determination of restitution, the parties are hereby Ordered to inform the Court via email at horan_chambers@pawd.uscourts.gov no later than Tuesday, October 5, 2021, as to the anticipated time required for the sentencing hearing.

  SO ORDERED, this 4th day of October 2021.

                s/*Marilyn J. Horan*
                United States District Judge